IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

STUART C. IRBY COMPANY                                                                    PLAINTIFF

V.                                                                CIVIL ACTION NO. 3:12cv007-B-A

BAYVIEW ELECTRIC COMPANY, LLC                                                DEFENDANT

**MEMORANDUM OPINION**

This cause comes before the court upon the plaintiff's motions for summary judgment. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Stuart C. Irby Company ("Irby"), is a supplier of electrical materials. On February 21, 2008, Irby and the defendant, Bayview Electric Company, LLC ("Bayview"), entered into a credit agreement for Bayview's purchase of electrical materials from Irby. Irby's terms and conditions of sales were made part of the credit agreement and impose a monthly 1.5% service charge on each invoice amount if Bayview fails to pay the invoice amount before the due date stated on the invoice. This charge continues to accrue until the invoice amount is paid.

Under this credit agreement, in 2011 Irby sold electrical materials to Bayview for use in a construction project in Blue Springs, Mississippi. The invoices reflecting the materials sold and their quantities and prices have been made a part of the record in this action and total a principal amount of $194,182.14, a figure which is now undisputed. Bayview has not paid Irby for the materials reflected in the invoices or the accumulated service charges as provided in the credit agreement. As of this date, Irby asserts that Bayview owes accrued service charges of approximately $65,000.00.

The plaintiff filed this breach of contract action in the Circuit Court of Union County, Mississippi, on December 12, 2011, seeking to recover the unpaid principal amount, accrued service charges, and prosecution costs. The defendant subsequently removed the case to this court and later moved for and was granted leave to file a counterclaim asserting that it is entitled to an offset of $6,689.17 for defective conduit and $28,619.00, which Bayview asserts it expended to remedy the problems caused by the defective conduit. The plaintiff has filed multiple summary judgment motions encompassing its original claims and the defendant's counterclaim.

Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical

doubt as to the material facts." *Id.* at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). Further, self-serving "affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

The court must render summary judgment in favor of the moving party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). The Supreme Court has cautioned, however, that the ruling court must not encroach upon the functions of the jury. The Court stated in *Reeves* as follows:

> [T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Id.* (citations omitted). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

## Analysis

Under Mississippi law, the plaintiff in any action for breach of contract carries the burden of proving by a preponderance of the evidence: (1) that a valid and binding contract exists and (2) that the defendant has broken or breached it. *Guinn v. Wilkerson*, 963 So. 2d 555, 558 (Miss. 2006). The Mississippi Supreme Court has recently held that monetary damages, formerly

3

considered an element of a breach of contract, is not an element of, but rather a remedy for, breach of contract. *Business Communications, Inc. v. Albert Banks*, 90 So. 3d 1221, 1225 (Miss. 2012) (overruling *Warwick v. Matheney*, 603 So. 2d 330 (Miss. 1992)).

The parties agree as to the elements of Irby's breach of contract claim. It is undisputed that the credit agreement is a valid and binding contract, and it is agreed that Bayview owes Irby for the materials it has purchased, albeit with an offset for defective goods and damages caused by the defective goods and with a waiver of service charges.

Bayview asserts that one of its primary reasons for non-payment is an alleged ongoing problem with Irby's invoicing. Bayview contends that Irby failed to provide proper billing information which resulted in delays in reconciling invoices and making payments to Irby. According to Bayview, Irby agreed to waive service charges as an accommodation for Irby's invoicing problems. Irby denies this agreement but contends that it has waived service charges for the initial thirty-day period after the due date and represents to the court that it "will not pursue those first thirty days of service charge accrual."

In support of its contention that Irby agreed to waive the service charges, Bayview submitted an unauthenticated email from an account manager with Irby to Tim Randall with Bayview stating in part, "[W]e are cancelling all previous service charges that were applied to your account. At this time, there are no charges due of any kind. We have fully absorbed all charges." This email is dated August 7, 2010, which predates by almost a year the earliest due date of any of the invoices for which Irby seeks payment in this litigation. The court, therefore, finds it irrelevant.

At this point Bayview argues only that Irby's alleged invoicing problems resulted in Bayview's difficulty in matching purchase orders and invoices, not that Bayview failed to receive materials. Irby's Director of Credit, Gena McCan, stated in an affidavit that each of the invoices at issue in this case indicates that the materials were delivered to the job site. She further stated that Bayview never notified Irby that it ultimately failed to receive any of the materials reflected in the invoices. Bayview's Chief Executive Officer, Robert Davies, has also now acknowledged in his deposition that "it's been reconciled at this point that we think we received everything." He further testified that Bayview does not dispute that it owes Irby money for those materials. The parties now agree that the principal amount is $194.182.14, but as mentioned, disagree on whether Bayview is entitled to an offset and waiver of service charges.

The credit agreement does not make provisions for the waiving of service charges due to invoicing problems or the purchaser's inability to match invoices and materials. Further, as previously mentioned, Irby is not seeking service charges for the first thirty-day period after the due date. In practical terms, this would have given Bayview ninety days to reconcile the matter – sixty days from the invoice date to the due date plus an additional thirty days. The court finds no merit to the defendant's argument regarding invoicing problems.

Bayview also asserts that the plaintiff refused to sign and send lien waivers to Bayview so that Bayview could process payment of the Irby invoices.[1] According to Bayview, Irby had

---

[1] The parties engage in much discussion about an email in the record referred to as the "Riebe Correspondence." On June 4, 2012, Bayview's controller, Shelly Riebe, sent an email with attached documents to an Irby Regional Director of Credit requesting that Irby sign several lien waivers in order for Bayview to make payment to Irby. The Riebe Correspondence and its attachments indicate that Bayview perceived at that time that it owed Irby a total of $224,251.44, and Irby offers the correspondence as evidence of Bayview's liability. Bayview argues that this is an offer to compromise and is inadmissible pursuant to Fed. R. Evid. 408. While the court disagrees with Bayview as to the nature of this correspondence, finding it no more than a routine business communication, it was

5

previously provided these waivers but that none were sent in connection with the invoices in question in the present litigation. As Irby notes, the credit agreement does not require that Irby execute lien waivers as a condition of payment for the materials it sells to Bayview. Further, lien waivers here serve no purpose because a material supplier to a subcontractor on a construction project in Mississippi has no lien rights. *See Monroe Banking & Trust Co. v. Allen*, 286 F. Supp. 201, 108 (N.D. Miss. 1968) (finding that a supplier of materials to a subcontractor had no right to acquire a lien under Miss. Code § 372 (now Miss. Code Ann. § 85-7-181)).

Bayview's counterclaim asserts that Bayview is entitled to an offset of $6,689.17 of defective conduit and $28,619.00, which Bayview asserts it expended to remedy the problems caused by the defective conduit. Bayview CEO Robert Davies testified that the actual defective conduit was only one 10-foot piece but that Bayview had to remove a larger amount that was already installed in order to find the defective piece. Bayview argues that the damages caused by the defective conduit are "incidental damages," which it argues are not excluded by the credit agreement, as opposed to "consequential damages," which are expressly excluded.

Mississippi's Uniform Commercial Code defines incidental damages to "include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." Miss. Code Ann. § 75-2-715(1). The statute also defines consequential damages, stating that "consequential damages resulting from the seller's breach include . . . any loss

---

unnecessary for the court to consider the Riebe Correspondence in ruling on the plaintiff's motions, as the terms of the credit agreement on their own support a ruling in Irby's favor.

resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know . . . ." Miss. Code Ann. § 75-2-715(2). The statute further provides that consequential damages also "include . . . injury to person or property proximately resulting from any breach of warranty." *Id.*

The court finds that the damages allegedly resulting from the defective conduit in this case are "consequential damages," and such damages are expressly excluded by the credit agreement. The sales terms, which the parties agree are part of the agreement, state, "In no event shall seller be liable for consequential damages." However, even if the court were persuaded by the defendant's assertion that the damages are incidental, the result would be the same, as the agreement provides that Irby's "sole and only responsibility shall be limited to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." This language tracks section 75-2-719(1) of the Mississippi Code, which expressly permits contract terms limiting damages, if the goods at issue are returned, to repayment of the purchase price or to the cost to repair or replace the goods. Davies testified that Bayview did not return any of the defective conduit but instead cut it up and threw it away. Having failed to comply with an express condition precedent to Irby's responsibility to repay, repair, or replace, Bayview is not entitled to an offset for the defective goods and, for the reasons stated, is not entitled to consequential damages resulting from those goods.

Finally, the court addresses Irby's request for attorneys' fees and costs incurred to recover the amounts Bayview owes Irby. The agreement plainly provides for such costs, stating, "If it becomes necessary to retain legal or professional assistance to collect the account, the customer agrees to pay the cost of all such legal or professional services, including any necessary

and required incidental expenses connected therewith." Mississippi law allows an award of attorneys' fees in actions for breach of contract when the contract language expressly provides for such. *See Greenlee v. Mitchell*, 607 So. 2d 97, 108 (Miss. 1992). In accordance with the parties' agreement and Mississippi law, the court finds that Irby is entitled to the attorneys' fees and costs incurred in the prosecution of this action. The court will allow Irby to submit these expenditures with supporting documentation demonstrating the amount and the reasonableness and necessity of these costs and will allow the defendant to file any objections thereto.

## Conclusion

For the foregoing reasons, the court finds that the plaintiff is entitled to summary judgment on its claims as well as on the defendant's counterclaim. A separate judgment in accordance with this opinion shall issue this day.

This, the 13th day of May, 2013.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**